aee

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VARLEN CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 09-cv-7915 |
| v. | ) |
| | ) Judge John W. Darrah |
| NATIONAL UNION FIRE | ) |
| INSURANCE COMPANY OF | ) |
| PITTSBURGH, PA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Varlen Corporation ("Varlen") brought this action against one of its insurers, National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), requesting a declaratory judgment in its favor with a finding that National Union is liable for all amounts expended by Varlen in connection with claims brought by government agencies in connection with two contaminated sites controlled by Varlen. National Union filed a Rule 19 Motion to Dismiss or to Compel Varlen Corporation to Join Liberty Mutual and Employers Mutual as Defendants, asserting that those other insurers were liable for a *pro rata* share of any liability to Varlen. Varlen responded and also filed a Cross-Motion for Partial Judgment on the Pleadings. By order of the Court, briefing was consolidated; and both motions are now fully briefed.

## BACKGROUND

The following facts are taken from Varlen's Complaint and are accepted as true for purposes of these motions.[1] Varlen is a Delaware corporation with its principal place of business in Chicago, Illinois. (Compl. ¶ 1.) National Union is a Pennsylvania corporation with its principal place of business in New York. (Compl. ¶ 2.) Subject-matter jurisdiction is based on diversity of citizenship.

National Union issued a series of primary general-liability policies to Varlen with effective dates from January 1, 1982, through 1989 or 1990. (Compl. ¶ 26.) Each of the policies provides Varlen with coverage for "property damage" caused by an "occurrence" and for "personal injury" caused by "wrongful entry." (Compl. ¶¶ 27-28.)

From 1980 to 1990, Varlen operated at a facility in Silvis, Illinois. (Compl. ¶ 5.) Operations at the Silvis facility involved diesel-fuel storage tanks and possible chlorinated solvent usage. (Compl. ¶ 5.) In May 2006, the Illinois Environmental Protection Agency identified groundwater contamination at the Silvis site and adjacent property and threatened action against Varlen for the contamination. (Compl. ¶ 6.) The Silvis facility was then enrolled in a cleanup program, and Varlen has expended $255,232.48 in remediation costs as of the initiation of this action. (Compl. ¶ 7.) On October 24, 2006, Varlen tendered a claim regarding the Silvis site to National Union; but National Union has failed to defend or indemnify Varlen. (Compl. ¶ 9.)

---

[1]For purposes of a motion to dismiss for failure to join an indispensable party, the court should accept the allegations of the complaint as true. *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2 (7th Cir. 2001). Rule 12(c) motions are analyzed in the same manner as Rule 12(b)(6) motions; all facts alleged in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

Varlen also ran into some environmental trouble with a site it previously controlled in Los Angeles County. Beginning in 1963, the Chrome Crankshaft Company of California ("CCC") operated a chrome-plating facility in Los Angeles County, California. (Compl. ¶ 11.) Varlen acquired CCC's stock in 1969 and continued to operate at that facility through at least 1999 (when the name was changed to Locomotive Air Services, Inc. ("LASI")). (Compl. ¶ 12.)

In November 1998, the California Department of Toxic Substances Control ("DTSC") issued an order, finding an "imminent and substantial endangerment" regarding contamination at the former CCC/LASI site, and ordered an investigation and cleanup under penalty of law. (Compl. ¶ 14.) Varlen spent $2.7 million in investigation and interim actions in response to DTSC's order. (Compl. ¶ 15.) On March 28, 2008, DTSC filed a complaint and Consent Decree against Varlen pursuant to federal and California law for contamination "at, around, and originating from" the CCC/LASI property. (Compl. ¶ 17.) Varlen incurred fees and costs of $150,000 in defending the DTSC action. (Compl. ¶ 18.) Varlen reached a settlement with DTSC and paid DTSC $5.1 million for site remediation and release of liability at the CCC/LASI site. (Compl. ¶¶ 19-20.)

Beginning on February 23, 2007, Varlen tendered DTSC's claim regarding the CCC/LASI site for defense and indemnity to National Union. (Compl. ¶ 24.) National Union failed to pay Varlen's defense costs or to indemnify Varlen regarding the claim. (Compl. ¶ 25.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(7) provides that an action can be dismissed for failure to join a party under Rule 19. The determination of whether an action should be dismissed because of an absent party involves a two-part analysis. First, the court determines if the party is a "necessary party" – that is, a party that should be joined if feasible. *Thomas v. United States*, 189 F.3d 662, 666 (7th Cir. 1999). Second, if an absent party is necessary but cannot be joined, the court must determine whether the litigation can proceed in that party's absence. *Id.* If a judgment cannot be structured in the absence of the necessary party that will protect the rights of both the absent party and the existing parties, the unavailable party is regarded as "indispensable," and the action is subject to dismissal. *Id.* Rule 19 motions are resolved on the pleadings as they appear at the time of the proposed joinder. *Associated Dry Goods Corp. v. Towers Fin. Corp.*, 920 F.2d 1121, 1124 (2nd Cir. 1990). Although state law may define the purported interests of the absent party, federal law determines the question of proper joinder. *Casualty Indem. Exchange v. Village of Crete*, 731 F.2d 457, 461 (7th Cir. 1984).

A Rule 12(c) motion for judgment on the pleadings permits a party to move for judgment after both the plaintiff's complaint and the defendant's answer have been filed. *See* Fed. R. Civ. P. 12(c). Such motions are reviewed under the same standard as motions to dismiss under Rule 12(b)(6). *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

## ANALYSIS

### *Varlen's Motion to Dismiss or to Compel Joinder*

National Union asserts that Liberty Mutual and Employers Mutual issued policies to Varlen similar to those issued by National Union and that this litigation cannot proceed in their absence. Although National Union repeatedly refers to those insurance companies as "indispensable" and asserts that dismissal is warranted in this case, National Union does not devote any of its argument to the second part of the required analysis set forth above (i.e., whether those insurers cannot be joined and whether their presence is required in order to structure a judgment that will protect the rights of the existing parties and the absent insurers). Indeed, National Union fails even to cite Federal Rule of Civil Procedure 12(b)(7), which provides for dismissal for failure to join a party under Rule 19. Rather, despite its request for dismissal, National Union confines its analysis to whether this Court should compel Varlen to join Liberty Mutual and Employers Mutual to this litigation. The Court's analysis will be similarly confined.

Rule 19 provides that certain parties are required to be joined if feasible:

(1) ***Required Party.*** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or

> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

National Union asserts that Employers Mutual issued policies to Varlen for policy periods from January 1, 1970, through January 1, 1975, and that Liberty Mutual issued policies to Varlen for policy periods which spanned from January 1, 1975, through January 1, 1983. (Copies of those policies are attached as Exhibits A and B to National Union's memorandum in support of its motion to dismiss or to compel joinder.) Because Varlen alleges the activities that led to the contamination of the Silvis and CCC/LASI sites date back to 1980 and 1963, respectively, National Union asserts that Liberty Mutual and Employers Mutual, whose policies were in force during a portion of that time, must also be joined in this litigation.

Citing Rule 19(a)(1)(A), National Union first asserts that the Court cannot afford complete relief between Varlen and National Union if the other insurers are absent from this litigation. National Union argues that those insurers' presence is necessary because Illinois law requires *pro rata* allocation in any case in which an insured seeks coverage for continuous, non-divisible injury that spans multiple time periods. National Union cites a number of Illinois cases in which *pro rata* allocation has been upheld among insurers who are already parties to the litigation but no case in which joinder of an absent insurer was compelled for purposes of determining *pro rata* allocation of liability. Moreover, in each of the cases National Union cites, the court examined the actual language in the insurance policies at issue in order to determine the liability of each

insurer. Here, National Union does not address any specific language in its own policies or those of the absent insurers. Thus, National Union has failed to establish what liability could be imposed on the absent insurers according to their respective policies or how fault could be apportioned among multiple insurers.

For the proposition that absent insurers generally must be joined to existing litigation, National Union relies on *Evergreen Park Nursing and Convalescent Home, Inc. v. American Equitable Assurance Co.*, 417 F.2d 1113 (1969) (*Evergreen*). In *Evergreen*, the plaintiff brought a diversity action in federal court to recover on fire-insurance policies issued by four insurance companies for damage sustained in a single fire. *Id.* at 1114. The plaintiff had identical claims against two other insurance companies in state court – their presence in the federal litigation would have destroyed diversity. *Id.* The district court found those other insurers to be indispensable parties and dismissed the action; plaintiff appealed. *Id.* Each of the policies at issue provided that the insurer would not be liable for a greater proportion of any loss than the amount under that policy bears to the whole amount of fire insurance on the property. *Id.* Accordingly, the Seventh Circuit noted that an action involving any of the insurers would require the court to decide whether the other five companies provide coverage, even though determination would not bind the insurers not before the court. *Id.* at 1115. Although the Seventh Circuit determined that a "closely analytical view" could indicate that the absent companies were not necessary under Federal Rule of Civil Procedure (a)(1)(A) or (B)(i), it nonetheless determined that those absent parties had "an interest in being involved in one action rather than two, and probably would be more comfortable in an action where

the liability issue will be decided consistently as to all the companies." *Id.* Because those absent insurers could not be joined to the federal litigation, the Seventh Circuit affirmed the dismissal. *Id.* at 1115-16. The brief opinion did not specifically discuss the allocation of liability among multiple insurers under Illinois law.

National Union purports to find further support in a decision issued by the Fourth Circuit. In *Schlumberger Industries, Inc. v. National Surety Corp.*, 36 F.3d 1274 (4th Cir. 1994), insurers brought a declaratory action to determine their rights and responsibilities for an insured's response costs for environmental contamination. The insured filed an analogous declaratory-judgment suit in state court against numerous insurance companies, including the plaintiffs in the federal action. *Id.* at 1277. The insured moved to dismiss the federal case for failure to join indispensable parties. *Id.* at 1285. The Fourth Circuit cited *Evergreen* as the only appellate court decision on the issue at hand and characterized the Seventh Circuit's decision as holding that, "where multiple insurers cover the insured's same liability for the same time period, all the insurers are indispensable parties to an adjudication as to coverage." *Id.* at 1286.

Notably, the Seventh Circuit later expressly disagreed with that generalization and further explained as follows:

> It is not always unjust for an insured with several primary insurers not to proceed against all of them. A victim of wrongdoing is not generally required to sue all the wrongdoers. . . . In a case of multiple, overlapping coverage the insurers who are not sued will not be bound by determinations made in a suit to which they are not parties, and the insurers who are sued can if they lose seek contribution afterward from the others.

8

*Rhone-Poulenc Inc. v. Int'l Ins. Co.*, 71 F.3d 1299, 1301 (1995) (*Rhone-Poulenc*). According to the *Rhone-Poulenc* court, whether other primary insurers are indispensable parties in a suit by an insured against a primary insurer "depends on the circumstances of the case." *Id.* There is no presumption that they are. *Id.* at 1302.

As it stands, there are only two parties to this litigation. Rule 19(a)(1)(A) is designed to protect the interests of those parties only. (As discussed below, the interests of absent parties who claim an interest in the litigation are protected by Rule 19(a)(1)(B).) National Union fails to show how complete relief between National Union and Varlen cannot be obtained if other potentially liable insurers are not joined. The fact that Varlen may be able to seek additional recovery from those insurers or that National Union may be able to seek contribution from those insurers is irrelevant for purposes of determining whether complete relief can be afforded *between Varlen and National Union*. It seems that National Union is primarily concerned about apportioning any liability it incurs among the absent insurers. Rule 19(a)(1)(A) is not the proper means of protecting that interest.

National Union also asserts that joinder is required under Rule 19(a)(1)(B). Specifically, National Union asserts that any ruling in this action may impose inconsistent obligations on National Union if Liberty Mutual or Employers Mutual later end up in litigation involving these same sites and seek contribution from National Union.

Under Rule 19(a)(1)(B), an absent party typically must claim an interest in the litigation before a court will determine that its interests would be impaired if not joined or

that an existing party could be subject to inconsistent obligations. *See United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (holding that district court did not err in finding absent party unnecessary when the absent party had notice of the litigation but nonetheless chose not to claim an interest). "Though the non-party need not actively intervene in the present litigation, it must at least manifest some legal claim in the subject matter of the action." *Aguinaga v. UBS AG*, No. 09 Civ. 03261(RJH), 2010 WL 5093433, at *10 (S.D.N.Y. Dec. 14, 2010) (compiling cases); *see also Kuhn Constr. Co. v. Ocean & Coastal Consultants, Inc.*, 723 F. Supp. 2d 676, 692 (D. Del. 2010) ("Rule 19(a)(1)(B) requires that the absent party 'claim[] an interest relating to the subject matter of the action . . .' and, where there is no showing that the absent party actually has claimed an interest relating to the subject of the action, the court may deny a motion to dismiss."); *Tribune Co. v. Swiss Reinsurance Am. Corp.*, No. 02 C 4772, at *6 (N.D. Ill. Sept. 30, 2003) (stating that "the absent party must actually claim an interest relating to subject of the action"). Here, unlike in *Evergreen*, where the absent insurers were engaged in parallel litigation with the insured, there is no indication that either of the absent insurers claims any interest in this litigation. Rather, it is National Union that claims an interest in joining those insurers to this case. Accordingly, Rule 19(a)(1)(B) is inapplicable at the threshold. National Union has failed to establish that Liberty Mutual and Employers Mutual are necessary parties. Therefore, National Union's Motion is denied.

*Varlen's Motion for Judgment on the Pleadings*

In connection with its opposition to National Union's Motion, Varlen moves, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings as to National Union's thirty-fourth affirmative defense, which reads as follows:

> National Union seeks and asserts a set-off or allocation of any liability on its part to the extent provided by law, equity, or contract based upon the alleged existence of coverage provided by others or payments made by others.

(Ans. at p. 19.) Varlen asserts that all insurance providers are jointly and severally liable under Illinois law such that National Union must seek to recover from other potentially liable carriers itself.

Varlen relies primarily on the Illinois Supreme Court's decision in *Zurich Ins. Co. v. Raymark Ind., Inc.*, 514 N.E.2d 150 (Ill. 1987) (*Zurich*). Zurich, an insurance carrier, sought a declaration that it had no liability for primary policies issued to its insured, Raymark Industries, Inc. ("Raymark"). Zurich also sued two of Raymark's other primary insurers, seeking a declaration that they were liable to defend and indemnify Raymark on thousands of underlying actions filed by plaintiffs claiming exposure to Raymark's asbestos-containing products. Raymark filed a counterclaim, seeking a declaration that each of its primary insurers was obligated to provide a complete defense in all of the underlying plaintiffs' cases. The trial court determined that all primary insurers were jointly and severally liable. Zurich filed a post-trial motion, requesting a declaration that it was entitled to a setoff in an amount equal to a *pro rata* allocation of all of the triggered policies. The trial court denied the motion, and the insurers appealed. *Id.* at 152-154.

*Zurich* involved cases of bodily injury; the court held that Raymark's policies – which were found to be identical in all relevant respects – provided coverage of a claim if the claimant suffers bodily injury *or* sickness *or* disease during a policy period. *Id.* at 165. Because the particular policies at issue in that case could be triggered by those three events, the *Zurich* court found that, in most cases, more than one insurance carrier would be obligated to provide coverage in an action against Raymark based on exposure to Raymark's products. *Id.* The court found nothing in the policy language that permitted a *pro rata* distribution amongst those insurers who were otherwise liable under their policies for claims that accrued during the time those policies were in effect. *Id.*

A claim involving property damage is different, and Illinois courts have noted as much. In *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 670 N.E.2d 740, 748 (Ill. App. Ct. 1996) (*Outboard Marine*), the Illinois Appellate Court, in a case of first impression in Illinois, addressed the question of how damages should be apportioned among various insurers for a claim for property damage involving a continuous injury. The *Outboard Marine* court expressly distinguished *Zurich* because it did not involve property damage and determined that, under the policies at issue, damages for a claim involving a continuing injury to property should be allocated according to the time each insurer was on the risk. *Id.* at 748-49. Contrary to Varlen's position, *Outboard Marine* is not in direct conflict with *Zurich*, which did not address claims involving continuous property damage. *Cf. AAA Disposal Sys, Inc. v. Aetna Cas. & Sur. Co.*, 821 N.E.2d 1278, (Ill. App. Ct. 2005) (citing *Outboard Marine* and stating that "*Zurich* does not apply to a case where, as here, a single continuous occurrence results in an unallocable loss

12

implicating successive policy periods"); *Maremont Corp. v. Continental Cas. Co.*, 760 N.E.2d 550, 556 (Ill. App. Ct. 2001) (noting that the *Zurich* court did not have to contend with the "murkiness of proof" that marks environmental pollution cases).

The Illinois Supreme Court has yet to determine whether *Zurich*'s *pro rata* holding applies to environmental pollution cases. Varlen's assertion that *Zurich* applies to all claims in which multiple insurers are potentially liable to an insured is a generalization that is not supported by the case law. Accordingly, Varlen has not established that National Union's thirty-fourth affirmative defense fails as a matter of law; and Varlen's Motion for Judgment on the Pleadings is denied.

## CONCLUSION

For the reasons stated above, National Union Fire Insurance Company of Pittsburgh, PA's Rule 19 Motion to Dismiss or to Compel Varlen Corporation to Join Liberty Mutual and Employers Mutual as Defendants and Varlen's Cross-Motion for Partial Judgment on the Pleadings are both denied.

Date: August 17, 2011

JOHN W. DARRAH
United States District Court Judge

13