CC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VARLEN CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 09-CV-7915 |
| NATIONAL UNION FIRE | ) |
| INSURANCE COMPANY OF | ) Judge John W. Darrah |
| PITTSBURGH, PA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Varlen Corporation ("Varlen") filed a Complaint on January 14, 2010, seeking declaratory judgment against its insurer, Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union"). Varlen seeks to have National Union declared "liable for all amounts expended by Varlen, whether for defense, investigation, or settlement, or payment of property damages or personal injuries, or amounts, or costs to be expended in the future" regarding environmental liability claims against Varlen, pursuant to general commercial liability insurance policies in effect between the parties. (Compl. ¶¶ 26, 32.)

National Union filed a motion for summary judgment that it does not owe a "duty to defend" Varlen against some of these environmental claims, pursuant to the policies.

Varlen is an Illinois corporation; National Union is a Pennsylvania corporation, and the amount in controversy exceeds $75,000. Therefore, jurisdiction is proper over this dispute pursuant to 28 U.S.C. § 1332(a)(1).

For the reasons set forth below, National Union's Motion for Summary Judgment is granted.

## BACKGROUND

Local Rule 56.1(a)(3) requires the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the nonmoving party to admit or deny each factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in its opponent's statement in the manner dictated by Local Rule 56.1 results in those facts' being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Local Rule 56.1(b)(3)(C) permits additional material facts to be provided by the nonmoving party. Local Rule 56.1(a)(3) then allows the moving party to submit a concise reply to these additional facts. Rule 56.1 requires statements of facts to consist of short, numbered paragraphs. To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this will not constitute a proper denial of the fact, and the fact will be admitted. *See Graziana v. Village of Oak Park*, 401 F. Supp. 2d 918, 937 (N.D. Ill. 2005).

The following is taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1. Varlen alleged in its Complaint that in May 2006, the Illinois Environmental Protection Agency ("IEPA") "threatened action"

against Varlen, relating to contamination at a former site owned by Varlen, the "Silvis Site." (Def.'s 56.1(a)(3) Statement ¶ 2.) Varlen previously owned and operated the Silvis Site, which was located in Rock Island, Illinois. (Pl.'s 56.1(b)(3)(C) Statement ¶ 3.) The IEPA demanded an investigation of the Silvis Site's contamination and a corrective action plan. (Def.'s 56.1(a)(3) Statement ¶ 2.) In a May 2006 letter to Varlen, the IEPA acknowledged that the Silvis Site was enrolled in its Voluntary Cleanup Program ("VCP") since March 22, 1991. (Id., ¶ 4.) Upon enrolling in the VCP, according to the IEPA, Varlen sought to focus on two areas of groundwater contamination: the Diesel Refueling Area and the Main Plant Chlorinated Solvent Area. (Id., ¶ 5.) The IEPA also informed Varlen in the letter that at least one additional area at the Silvis Site might contain environmental waste. (Id., ¶ 6.) The IEPA acknowledged in its May 2006 letter that the VCP has evolved into the "Site Remediation Program" ("SRP") and that participation in the SRP was voluntary. (Id., ¶ 7.)

On August 11, 2006, the IEPA sent Varlen a "notice of violation" letter pursuant to Section 31(a) of the Illinois Environmental Protection Act. (Pl.'s 56.1(b)(3)(C) Statement ¶ 6.) This letter provided Varlen notice of its alleged violations of environmental laws and regulations. (Id., ¶ 7.) The letter further indicated that if Varlen did not respond, the IEPA "may proceed with a referral to the prosecutorial authority." (Id., ¶ 8.) The IEPA has continued to threaten Varlen with additional enforcement actions, legal penalties, and formal lawsuits regarding its environmental violations. (Id., ¶ 10.)

National Union issued Varlen the Commercial General Liability Policies, beginning on January 1, 1982, through May 1, 1990. (Def.'s 56.1(a)(3) Statement ¶¶ 11-19.) Under these policies, National Union agreed, in pertinent part:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of A. bodily injury or B. property damage to which this insurance applies, caused by an occurrence, and the company shall have the right and *duty to defend any suit* against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

(Pl.'s 56.1(b)(3)(C) Statement ¶ 1.) (emphasis added). In at least two of these policies, "suit" is defined as "a civil proceeding in which damages because of 'bodily injury,' 'property damage', 'personal injury' or 'advertising injury' to which this insurance applies are alleged. 'Suit' includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent." (Def.'s 56.1(a)(3) Statement ¶ 6.) The policies also state that "[t]he company will pay, in addition to the applicable limit of liability; . . . reasonable expenses incurred by the insured at the company's request in assisting the company in the investigation or defense of any claim or suit." (Pl.'s 56.1(b)(3)(C) Statement ¶ 2.)

One of National Union's affirmative defenses to Varlen's Complaint provides that "some of the purported underlying claims alleged by Varlen in its Complaint do not constitute a 'suit' against the insured seeking 'damages.'" (Def.'s 56.1(a)(3) Statement

¶ 8.) Varlen's Assistant General Counsel and Assistant Secretary, Edward Brosius, stated at his deposition that he was unaware of any lawsuit filed in court with respect to the Silvis Site claims at issue. (*Id.*, ¶ 10.)

On May 18, 2010, Chartis Claims, Inc., a claims administrator for National Union, issued a letter to Varlen. (Pl.'s 56.1(b)(3)(C) Statement ¶ 11.) This letter was an acceptance-of-defense and reservation-of-rights letter relating to a claim made by the Kansas Department of Health and Environment ("KDHE") against Varlen regarding an industrial site it operated in Kansas. (*Id.*, ¶ 12.) In this instance, National Union accepted the defense of Varlen's (and its subsidiary, Unit Rail Anchor Company, Inc.'s) KDHE claim under the same insurance policies at issue. (*Id.*, ¶¶ 12-13.) This KDHE claim did not involve a formal lawsuit. (*Id.*, ¶ 14.)

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but, rather, "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not enough to oppose a motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

At issue is whether or not National Union has a duty to defend environmental claims against Varlen at the Silvis Site. National Union argues no "suit" has been filed regarding the Silvis Site, and, therefore, National Union has no duty to defend Varlen with respect to the site.[1] Varlen opposes National Union's position and argues that, despite the absence of a formal lawsuit, National Union still has an obligation to defend Varlen with respect to its IEPA claims. Finally, Varlen argues National Union is

---

[1] National Union only contests its duty to defend at the Silvis Site, and this Motion for summary judgment does not address National Union's potential duty to indemnify under the insurance policies for remediation and clean-up costs, as claimed by Varlen. (Resp. at 8.)

6

estopped from denying its duty to defend Varlen as to the Silvis Site based on the "mend the hold" doctrine in Illinois law.[2]

*Choice of Law*

National Union proposes that Illinois law governs this dispute. Varlen fails to address the choice-of-law issue in its Response; however, at the summary judgment stage, a determination as to this issue must be made based on the facts presented. *Nabozny v. Podlesny*, 92 F.3d 446, 457 n.9 (7th Cir. 1996).

Where an insurance policy has no choice-of-law provision, the court must determine which state's law is applicable. National Union alleges the insurance policies at issue did not have choice-of-law provisions. (Def.'s Mem. at 3.) "When a district court sits in diversity, it must apply the choice of law principles of the forum state to determine which state's substantive law governs the proceeding." *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006). Thus, Illinois' choice-of-law principles govern the present case. *Id.*

In Illinois, the choice-of-law question in insurance coverage disputes is determined by applying the "most significant contacts" test. *Costello v. Liberty Mutual Fire Ins. Co.*, 876 N.E.2d 115, 120 (Ill. App. Ct. 2007) (*Costello*). Under this test, the court must identify states that have meaningful contacts with the underlying dispute and evaluate which state has the most significant contacts with this dispute. *Id.* In applying this test to insurance policy disputes, the court considers: "the location of the subject

---

[2] Note that Varlen's arguments are found in both: (1) its original brief opposing National Union's motion for summary judgment (deemed moot, as National Union was given leave to refile its motion in conformance with the Local Rules after failing to abide by Local Rule 56.1) and (2) its supplemental response brief.

matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to the contract, the place of performance, or other place bearing a rational relationship to the general contract." *Costello*, 876 N.E.2d at 120 (quoting *Westchester Fire Insurance Co. v. G. Heileman Brewing Co.*, 747 N.E.2d 955, 961 (Ill. App. Ct. 2001)).

In this case, the policies were issued in Illinois, where Varlen's principal place of business is also located. Of particular importance is the subject matter at issue: the Silvis Site, where the environmental violations allegedly occurred, is also located in Illinois. National Union is a Pennsylvania corporation with its principal place of business in New York. However, it is apparent that the state with the most significant contacts in this dispute is Illinois. Therefore, Illinois law governs this dispute.

### Duty to Defend a "Suit"

National Union asserts that it is not obligated to defend Varlen in its IEPA violations because the general liability policies it issued require defense where there is a "suit" filed against the insured, and the IEPA violations are not considered "suits" under the insurance policies.

In support of its position, National Union relies primarily on an Illinois Supreme Court decision that discussed the term "suit" in an insurance policy. *Lapham-Hickey Steel v. Protection Mut. Ins.*, 655 N.E.2d 842 (Ill. 1995) (*Lapham-Hickey*). In *Lapham-Hickey*, the defendant was not required to defend the insured in EPA regulatory proceedings because the policy (which contained language similar to the National Union policies set out above) required the defendant to defend only against "suits." *Id.* at 846.

8

The *Lapham-Hickey* court reviewed the language in the underlying policy, as "[t]he construction of an insurance policy and its provisions is a question of law." *Id.* (citing *Outboard Marine Corp. v. Liberty Mutual Insurance Corp.*, 607 N.E.2d 1204 (Ill. 1992)). That court considered the meaning of "suit" in the context of an environmental issue and found that where the word "suit" was not defined in the insurance policy at issue, the usage of the word was clear and unambiguous: it was to "be given its plain and ordinary meaning. In common usage, the word 'suit' refers to a proceeding in a court of law." *Id.* at 847. The court then found that letters from the Environmental Protection Agency, without the initiation of a formal proceeding in court, did not constitute a "suit" for purposes of triggering a duty to defend under the insurance policy. *Id.*

As Varlen points out, the *Lapham-Hickey* case was analyzed by the Seventh Circuit in *Keystone Consolidated Industries, Inc. v. Employers Insurance Company of Wausau*, 456 F.3d 758 (7th Cir. 2006) (*Keystone*). Varlen, here, argues that the holding in *Keystone* establishes that a lawsuit is not necessary to trigger a duty to defend in a general liability policy. However, *Keystone* does not support Varlen's assertion.

In *Keystone*, the Seventh Circuit focused on whether or not the duty to *indemnify* was triggered in the absence of a lawsuit. *Id.* at 759. The Seventh Circuit held that a formal lawsuit was not necessary to trigger the *duty to indemnify* in a general liability insurance policy. In *Keystone*, there were two sets of insurance policies at issue: general liability policies and excess umbrella policies. *Id.* at 763. The *Keystone* plaintiff conceded that, under the general liability policies, the duty to defend was triggered only by the filing of a lawsuit. *Id.* Specifically, the court, in reversing the district court's

9

summary judgment ruling in favor of the defendant, found that a lawsuit was not necessary to trigger the defendant's duty to indemnify.[3] In *Keystone*, "[Plaintiff] . . . requested indemnification from [Defendant] for costs associated with *cleaning up* groundwater and other contamination at each site." *Id.* at 759 (emphasis added). The Seventh Circuit found that the duty to defend and the duty to indemnify are separate and independent duties. *Keystone*, 456 F.3d at 765. The Court explained that "the fact that [defendant's] duty to defend does not arise unless a lawsuit is filed does not mean that [defendant's] duty to indemnify depends on the filing of that lawsuit." *Id.*

Varlen's argument conflates this distinction. The Seventh Circuit has not held that in a general liability policy, like the ones at issue here, a lawsuit is not necessary to trigger a *duty to defend*. The *Keystone* opinion is only applicable to the definition of a duty to indemnify, an issue not now presented here. Therefore, *Lapham-Hickey* is instructive and controlling as to the interpretation of the National Union policies. Under the general liability policies, the plain language indicates that National Union's duty to defend is triggered by the filing of a suit. It is also noteworthy that at least two of the policies at issue *do* define suit, providing it is: "a civil proceeding in which damages because of 'bodily injury', 'property damage', 'personal injury' or 'advertising injury' to which this insurance applies are alleged." (Def.'s 56.1(a)(3) Statement ¶ 19.) It is unambiguous that the word "suit," as used in all of National Union's policies at issue, is

---

[3] Further, in discussing the language of an umbrella policy, the *Keystone* Court definitively clarified it was not deciding the issue of the duty to defend: "But although the potential construction of [Defendant's] duty to defend under the excess umbrella policies provides interpretative support for the conclusion that a lawsuit is also not required to trigger its duty to indemnify, *the duty to defend is not directly before us.*" *Id.* at 765 (emphasis added).

10

construed to mean a civil proceeding in court and, therefore, "requires the action in a court of law before an insurer's duty to defend is triggered." *Sokol and Company v. Atlantic Mut. Ins. Co.*, No. 09-CV-7915, 2004 WL 2064890, at *3 (N.D. Ill. Sept. 14, 2004) (quoting *Lapham-Hickey*, 655 N.E.2d at 847). As mentioned above, Varlen concedes that, to its knowledge, no suit has been filed in court regarding the environmental issues at the Silvis Site. Therefore, under the plain and ordinary language of the policy, there is no "suit" under the policy language that triggers National Union's duty to defend Varlen with respect to the Silvis Site.

Moreover, *Lapham-Hickey* provides a practical rationale for this construction of the word "suit" as a proceeding in a court of law:

> Whether an insurer's duty to defend has arisen is determined by looking to the allegations in the underlying complaint and comparing these allegations to the policy provisions. If the facts alleged in the underlying complaint fall within or even potentially within policy coverage, the insurer has a duty to defend its insured against the complaint. Thus, the duty to defend extends only to suits and not to allegations, accusations or claims which have not been embodied within the context of a complaint. In the instant case, a complaint alleging liability for property damage has never been filed against [Plaintiff]. Without a complaint, there is no "suit." And without a "suit," [Defendant]'s duty to defend [Plaintiff] is not triggered.

*Lapham-Hickey*, 655 N.E.2d at 847 (citations omitted).

### "Mend the Hold" Doctrine

Varlen, in its supplemental response to National Union's Motion for Summary Judgment, also attempts to avoid summary judgment on this issue by relying on the so-called "mend the hold" doctrine, which provides that "a contract party is not permitted to

change its position on the meaning of a contract in the middle of litigation over it." *RLI Insurance Co. v. Conseco, Inc.*, 543 F.3d 384, 392 n.2 (7th Cir. 2008) (quoting *Utica Mut. Ins. Co. v. Vigo Coal Co., Inc.*, 393 F.3d 707, 716 (7th Cir. 2004)).[4] Specifically, Varlen points out that National Union provided Varlen a defense to a claim by the Kansas Department of Health and Environment against Varlen even though no lawsuit was filed. Varlen argues National Union cannot now refuse to defend Varlen with regards to the Illinois Silvis Site claims.

However, none of the three cases Varlen cites in its supplemental response hold that the "mend the hold" doctrine applied. Instead, those courts found the doctrine properly applicable in cases where a defendant changes its position in the midst of a lawsuit: "cases in which courts have applied the doctrine involve situations in which the offending party changed the initial reason for not performing a contract to a completely different reason *during litigation*." *Liberty Mut. Ins. Co. v. American Home Assurance Co., Inc.*, 368 Ill.App.3d 948, 958 (Ill. App. Ct. 2006) (emphasis added). Specifically, in insurance cases, "courts have precluded insurers from denying a claim on one basis and then changing the basis for denial during litigation." *Id.* Here, National Union has not changed its course midstream. Since the onset of this litigation, National Union has asserted as a defense that "some of the purported underlying claims alleged by Varlen in its Complaint do not constitute a 'suit' against the insured seeking 'damages.'" (Def.'s

---

[4] The Seventh Circuit expounded briefly on the history of the term, explaining: "it is the name of a common law doctrine that limits the right of a party to a contract suit to change his litigating position. In fact the phrase is a nineteenth-century wrestling term, meaning to get a better grip (hold) on your opponent." *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 362 (7th Cir. 1990).

Answer, Twentieth Affirmative Defense, at 16.) The manner in which National Union handled Varlen's Kansas claims is immaterial to the present litigation. Therefore, the "mend the hold" doctrine is inapplicable here and does not preclude National Union from being granted summary judgment on its duty to defend Varlen's Silvis Site claims.

## CONCLUSION

In light of the foregoing analysis, National Union's Motion for Summary Judgment is granted: National Union does not have a duty to defend Varlen with respect to claims, absent a filed lawsuit, relating to the Silvis Site. This opinion makes no ruling as to National Union's duty to indemnify. As Varlen argues in its Response, there remains a factual issue as to whether Varlen is "legally obligated to pay" costs related to the Silvis Site's clean-up: the issue of National Union's duty to indemnify remains, "that is, its duty either to reimburse the insured for losses it incurs directly or to pay sums that the insured becomes legally obligated to pay to others." *Keystone,* 456 F.3d at 762.

Date: 6-13-12

JOHN W. DARRAH
United States District Court Judge